UNITED STATES v. The LAC LA BELLE. See Case No. 7,968.

---

## Case No. 15,548.

UNITED STATES v. LA COSTE.

[2 Mason, 129.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1820.

### SLAVE TRADE—INDICTMENT—SURPLUSAGE—WORDS OF STATUTE.

1. The offence of sailing from a port with an intent to engage in the slave trade, under the act of 20th of April, 1818, c. 86, §§ 2, 3 [3 Story's Laws, 1698; 3 Stat. 450, c. 91], is not committed unless the vessel sails out of the port.

[Cited in U. S. v. Smith, Case No. 16,338.]

2. If under the act an offence of causing a vessel to sail from a port of the United States, be alleged in the indictment to be on a day now last past, and on divers days and times before and since that day, the allegation is sufficient; for the words, "now, last past," mean last past before the caption of the indictment, and the words, "on divers days and times," may be rejected as surplusage, if the offence be but a single offence.

[Cited in Cook v. State, 11 Ga. 53; Cowley v. People, 83 N. Y. 472; Gallagher v. State, 26 Wis. 425; State v. Briggs, 68 Iowa, 419, 27 N. W. 359. Cited in brief in State v. Hayes, 24 Mo. 358. Cited in State v. Nichols, 58 N. H. 42; Wells v. Com., 12 Gray, 328.]

3. It is not necessary in an indictment for such an offence, to allege that the negroes, &c. were to be transported to the United States, or their territories, or that they were free and not bound to service, or that the defendant was a citizen or resident within the United States, or that the offence was committed on board an American vessel. It is sufficient if the indictment follow in these respects, the language of the statute, and is as certain.

[Cited in U. S. v. O'Sullivan, Case No. 15,-974; U. S. v. Quinn, Id. 16,110.]

4. One of the phrases used in the statute, being "persons of colour," it is sufficient in the indictment to use the same words, without more definite specification of the meaning of the words.

5. It is sufficient in the indictment for such offence, to allege that the defendant, "as master,

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by William P. Mason, Esq.]

for some other person, the name whereof being to the jurors yet unknown," did cause the vessel to sail, &c.

Indictment [against Adolphe La Coste] on the second and third sections of the act of 20th of April, 1818, c. 86 [3 Story's Laws 1698; 3 Stat. 450, c. 91], against the slave trade. There were various counts in the indictment, but that which was principally relied on, was for causing a certain vessel, called the Science, to sail from the port of New York, for the purpose of procuring negroes, &c. from Africa, to be transported and held, sold and disposed of as slaves. At the trial the cause turned principally on questions of fact.

Mr. Hooper and J. T. Austin for defendant, contended that the crime, if at all, was committed within the port of New York, and was exclusively cognizable in the circuit court of the United States for the judicial district comprehending that port. They argued, that unless the crime was committed after the vessel passed the dividing line between the port of New York and the high seas, so as to be committed on the high seas, it was not cognizable under the laws of the United States, in the circuit court of the United States, for Massachusetts district. They contended that sailing "from the port" is inclusive of the port, and supposes the act to commence within the port; and that this was the true and consistent meaning of the statute. That no vessel could be said to sail from a port, unless she were within the port. They cited The Ann [Case No. 397]; Evans v. Bollam [Id. 4,554]; U. S. v. Burr [Id. 14,693].

Mr. Blake, U. S. Dist. Atty., e contra, argued that the words of the statute, "sail from any port," necessarily excluded the port. This was the ordinary meaning of the word "from." If the vessel had sailed within the port, with the intent stated in the statute, and had never gone beyond it, no crime would have been committed. As soon as the vessel sailed from the dividing line of the port of New York, she was on the high seas, and there the crime was committed. So that as the defendant was first apprehended and brought into Massachusetts district, this court, and this court alone, by the statutes of the United States, has jurisdiction.

STORY, Circuit Justice. On the point of law, the court does not entertain any kind of doubt. It is admitted that this court has jurisdiction, if the crime was committed on the high seas. It is admitted, also, that the port of New York lies contiguous to the sea, and that the moment a vessel sails without the exterior limit of that port, she is on the high seas. The words of the statute are, that no citizen, &c. or any other person, &c. shall "cause any such ship or vessel to sail from any port or place whatsoever," within the jurisdiction of the United States, &c. It is clear to us, that the word "from," is here exclusive of the port; and if the vessel had never sailed out of the port, no crime would have been committed within the purview of the statute. The terminus a quo is the boundary line of the port, and when the vessel passes from that, she sails from the port, and is on the high seas. Many analogous cases have been decided in this court.

A verdict of guilty was brought in against the prisoner. After which, a motion was made by the prisoner's counsel, for a new trial, on the following grounds: Because the judge, who presided at the trial, and directed the jury, mis-directed them in certain matters of law, and also neglected and omitted to direct them in certain other matters of law, that is to say, the said judge directed the jury that the offence charged against the prisoner in said indictment, was not committed in construction of law, until the vessel had passed the limits of the port of Baltimore, and the said judge omitted to direct the jury, that the offence, if any, of the defendant, originated and was complete, immediately when the sails were raised, and the vessel was under way on the voyage; and that, if she sailed from a place within the port, the offence in point of law, was committed in the state of Maryland; and the judge omitted to direct the jury, that the government were bound to shew that the offence was committed out of the jurisdiction of any particular state, and that, if they had no evidence conclusive of the fact, they must acquit the defendant.

Mr. Hooper, in support of the motion. It is a principle of the common law, that every offence shall be tried by a jury of the vicinage. The place where the act is alleged to be done, is the place where it should be tried. This is the rule, not only of the English law, but of our own state and national laws. The reason of it is plain, and it applies with great force to the present case. Could the prisoner have been tried in Baltimore, or could he now be tried there, he would not have been destitute of the necessary papers and witnesses which he has been unable to procure here. The court will, therefore, be solicitous to afford him the privilege of a new trial, if any legal grounds can be shown in support of his claim to it. The construction of the act by the court, in support of the jurisdiction, conforms, we think, neither to the popular or common sense meaning of the language, nor a technical exposition of the words. As the word from, may have various meanings according to its connection with other words and phrases, it becomes important to inquire, what, from the whole tenor of the statute, appears to have been the meaning of the legislature. They have made the fitting, preparing, &c. of a vessel in a port, for the purpose of procuring slaves, criminal. And why should they not attach the same importance to the sailing, or causing the vessel to sail, on the voyage within the port, as without the

bounds of the port? Can it be imagined, that congress intended to make it criminal to sail from the exterior line of a port, and to say, that a vessel sailing on the voyage for the unlawful purposes mentioned, should not be considered as transgressing the law, until she had passed the bounds of the port? What reason can be given for such a supposition? Is not the sailing in the harbor on the voyage, as much a commission of the offence intended to be punished? Most certainly it is. It is as great an offence as the fitting out of the vessel in the harbor. The word place makes the meaning of the legislature clear. Sailing from a place, &c. is made criminal. What is the wharf or dock in the harbor where the ship lies, but a place? And what is sailing from thence, but sailing from a place? It is plain then, that the meaning of the legislature was, that the moment the sails were raised, and the vessel got under way on the voyage, then in the eye of the law the offence was committed of sailing from a place; and if it happened in a port, from a port. But putting the intention of the legislature and other parts of the act out of the question, what could be the technical construction of the phrase, sailing from a port? When is the vessel properly said to sail from a port? Certainly when she is traversing the boundary line. The moment her bows are beyond the line, she is sailing. Where? Not in the port, nor to it, but out of it, and therefore from it. The offence is committed the moment the vessel is traversing the line. It cannot be committed but once. But further, to suppose that the construction which the government contend for is correct, would be to consider congress as having undertaken to legislate upon cases not within the scope of their authority. A foreign vessel, which had never entered our ports, might be condemned for approaching to the exterior boundary line of them, and then sailing from them. If the sailing from a place in the harbor be a crime, can the court bring the case within their cognizance and jurisdiction, by alleging it to have been committed at any point in the voyage they please? Surely not. The offence is single. It cannot be committed but once. It either is committed by sailing from a place, in the harbor, or it is not. If it is, then the government cannot allege it to have been committed in another place. It is not in the power of the court, to make the sailing legal, until the vessel arrives at a certain point in the voyage, and then illegal beyond that point. They must take the case as they find it, and no technical fiction can be allowed to deprive the defendant of his right to a trial, where the offence arose. It is unnecessary, before this court, to cite cases illustrative of the principle, that every man is to be tried where his offence is committed. It is one of the most familiar in the law, as well of England as our own country. Among the frequent recognitions of it in our own reports, [Lesher v. Gehr] 1 Dall. [1 U. S.] 333.

U. S. v. Burr [Case No. 14,693], and The Ann [Id. 397], may be mentioned. There is one case, however, in the English books, so much resembling the present, that it is proper now particularly to notice it. By St. 3 Jac. it is provided, "that every subject of this realm, that shall goe or passe out of this realm to serve any foraign prince, state, or potentate, or shall passe over the seas, and there shall voluntarily serve any such foraign prince, &c. shall be a falon." Coke (3 Inst. 80), in commenting upon this statute, recognizes the rule, that in criminal causes concerning life or member, "ubi deliquit ibi puniatur," the offence is local, and cannot be tried but where it is committed, nor cannot be alleged to be in any other place than where in truth it was done. This felony must be tried in the county where he went or passed over, and consequently in that town where part of the act was done. The words passe out of this realm, or passe over the seas, might surely as well be held to exclude the place from which he passed over, as the words, sail from a port, be taken to be exclusive of the port. Upon the whole it is contended with confidence, that whether the interests of public justice; the intention of the legislature, the popular or strict construction of the words be considered, the prisoner should be tried in the district from which he sailed, and is entitled, therefore, to have the verdict set aside, and a new trial granted.

A motion was also made in arrest of judgment, on the following among other grounds: (1) Because the statement in each of the counts, of the time when the said supposed offence was committed, is uncertain, repugnant, and entirely insufficient. (2) Because it is not stated, that the negroes and persons of color mentioned in the said indictment, were to be transported to any place in the United States, or the territories thereof, nor that they were free, and not bound to service or labor. (3) Because the words, persons of color, in the counts in said indictment, are material parts of the same, and are indefinite and unintelligible. (4) Because the names of the owner or owners of the said vessel, are alleged to be to the jurors unknown, when they were known or could be ascertained.

Other exceptions were also taken to the indictment, and commented on by the counsel for the prisoner; but were rejected without observation by the court, as not applying to the third count of the indictment, which was the only one relied on by the government.

Mr. Hooper, for the prisoner, contended on the first exception, that the statement in each of the counts, of the time when the said supposed offence was committed, was uncertain, repugnant, and entirely insufficient, and that this was a fatal objection. If there is any thing well settled, it is that the time, the year, and the day, of committing the alleged offence, must be precisely stated in every indictment. 2 Co. Inst. 318;

Chit. 218; 2 Hawk. P. C. c. 23, § 88; Id. c. 25, § 77; Com. Dig. "Indictment," G, 2. No indictment can be good, without precisely showing the year and day of all the material facts alleged in it; or if any indictment lay the offence on an impossible day, or on a day that makes the indictment repugnant to itself; or if it lay one and the same offence at different days, it is bad. Vin. Abr. 14, 378. An indictment is the king's count, and ought to be certain for the year, day, place, and fact. Id. 387. In an indictment against two for scolding, the time was precisely laid, but it was objected, that the scolding of the one, could not be the scolding of the other; but Holt said, "they may scold jointly, and therefore it is well, the time being sufficiently certain." There is, in fact, no precedent it is believed, of alleging an offence on divers days and times. except in the case of nuisances, where the offence is continuing, and even there, a particular day is stated, and divers days and times, after and before, &c. In an information, indeed, the same strictness has not been required, but this is not an information, but an indictment. The offence here was necessarily single. It commenced and was complete, when the vessel began to sail from a certain place or point, assume that point to be where you please; and it could have but one commencement and completion.

As to the second exception. It is not stated that the negroes and persons of color mentioned in said indictment, were to be transported to any place in the United States, or the territories thereof, nor that they were free, and not bound to service or labor. The law is clear, that it is not always sufficient to follow in indictments the words of the statute. 2 Hawk. P. C. c. 25, §§ 3, 71; Bac. Abr. "Indictment," G. They must be stated with the addition of such things as are to be inferred from the act. Did the government intend to punish the transporting of negroes from Africa to a foreign port? Is there any thing in the statute expressly forbidding such traffic? Is it not unusual to legislate on matters not done by our citizens, nor within our jurisdiction? If there be no express statute law, is not the inference a fair one, that the law was intended to apply to the bringing of them into the territories of the United States? Is not the drift of all other similar statutes against this latter traffic only? If such traffic as the indictment is framed to reach, be not against any express law, the inference is, that the law did intend only to forbid traffic carried on between Africa and the United States, and bringing into our territories, people of the above description. But if this be so, then it is necessary (even if there be no express words in the statute declaring this) to allege it in the indictment, and to bring the defendants not only within the letter, but the spirit. scope. and real intent of the law. Again. It is not stated

that they were free. Who can know from the indictment that it was proved? Is it not necessary to show that they were not slaves legally bound to service before? Is it against our laws, to fit out a ship to bring from St. Domingo, or any other foreign port or place, slaves that have escaped from the Southern plantations in the United States?

As to the third exception. The words, persons of colour, in the said indictment, are material, and are indefinite and unintelligible. The words in the act are too vague; and where the statute is uncertain, no indictment can be founded on its words. U. S. v. Cantril, 4 Cranch [8 U. S.] 167. The exception is to the indefiniteness of material words. If the transporting, &c. of persons of colour, is an offence, (and certainly the statute has endeavoured to make it so) then it was sufficient to shew on the trial, that such persons were transported. And it must now be presumed, that this was in proof as far as it could be, and that on such proof, the defendant was convicted. It does not help the indictment, to allege the transportation of negroes also, for proof of either would support the indictment. It is of no consequence, that the legislature have used the phrase; for if they describe an offence in so imperfect and vague a manner, that it cannot be understood, no indictment founded on such description can be sustained.

In support of the fourth exception, 2 Hawk. P. C. c. 25, § 91, Chit. 275, and 3 Camp. 264, were cited.

STORY, Circuit Justice. A motion has been made for a new trial in this case, upon the ground of mis-direction by the court in the opinion given at the trial, that the offence charged in the indictment could not be committed, unless the vessel sailed without the port of New York; and that "from the port," in the statute, was exclusive of the port. We have heard nothing that has induced us to change our opinion; and it is conformable to the construction which similar words, in other penal statutes of the United States, have received from this, as well as from the supreme court. The only new case cited at the bar is that from 3 Co. Inst. 30, where Lord Coke is commenting on the statute of 3 Jac. c. 4, which declares it a felony in every subject, "that shall go or pass out of this realm, to serve any foreign prince, &c. or shall pass over the seas and there shall voluntarily serve any such foreign prince," not having taken the oath of obedience, &c. He says, it had been objected, that the offences here stated could not be tried within the realm, because done out of the realm. But he answers that by a subsequent clause in the act, "all and every offence to be committed or done against the act," is to be inquired, &c. at the assizes, or at the quarter sessions, "to be holden within the shire, &c. where such offence shall happen." So, he adds, by the meaning of the

makers of this act, the felony must be tried in the county where the party went or passed over, and consequently in that town, where part of the act was done; and that the words, "wherein such offence shall be committed," must be construed in this case, where part of the offence is committed. Not to say one word of this forced and unnatural construction, that "passing over the seas and there voluntarily serving a foreign prince," is an offence committed in part before going on the seas, (which, for aught that appears, is Lord Coke's own private opinion, and was never judicially decided) it is sufficient to say, that the opinion of Lord Coke proceeds altogether upon the ground, that this latter clause expounds and restrains the sense, in which the preceding language was used by the legislature. And it tacitly admits, that but for such clause the offence would be deemed to be wholly committed without the realm. We do not, however, consider this case as bearing much on the case before us. The words are not the same as the words of our statute, and there is no such qualifying clause here as there. And if there were, we should incline to follow the rational construction of our own courts in analogous cases, rather than strain so hard to wrest words out of their natural and ordinary import. Another reason for a new trial is the omission of the court to give certain directions to the jury, though no such directions were asked for. If the evidence did not warrant the conviction, in point of law, this would be a sufficient reason at all events for a new trial: but a mere omission to do, what no one at the moment suggested to be material, and was taken for granted to be understood by all, would not justify us in such a course. The reason, why the court did not direct the jury that the onus was on the United States to establish jurisdiction in the case, was because there was no doubt of the rule suggested by any one; and supposing the court were right in the construction of the statute, there was no doubt in point of fact, from the proofs in the case, that the jurisdiction was established. If the crime was not committed within the port of New York, but only by sailing out of the port, which was contiguous to the high seas, there was nothing which could prejudice the defendant in the omission. The motion for a new trial is therefore overruled.

A motion has also been made in arrest of judgment, upon the ground of alleged defects in the indictment. The list of supposed errors is indeed truly formidable. But whatever may be their validity and force in general, as to which we decide nothing, it will be sufficient for us to confine our attention to the third count in the indictment, on which alone much stress was laid at the trial. If that count be good, it will be sufficient to warrant a judgment, even though all the others shall be totally defective. The first exception is, that the offence (viz. causing the

vessel to sail from the port of New York) is alleged to have been committed "on the third day of January, now last past, and on divers days and times before and since the last mentioned day, and after the said 20th day of April, 1818;" whereas, it is but a single offence, and could be committed but on a single day, and should have been alleged to have been committed on a day and year certain, and not on divers days, or on a day now last past. In respect to the averment, it is certainly wanting in technical accuracy and precision, and departs from the settled forms of pleading. But if it have certainty to a proper intent, and can be sustained by the rules of law, we are bound to sustain it, though we cannot but lament, that it should have been so inartificially drawn. In our opinion, the words, "on the third day of January, now last past," refer to the third day of January, last past, before the caption of the indictment, that is to say, to the third day of January. A. D. 1820, and therefore are sufficiently certain. This conforms to the doctrine laid down in the better authorities. Hawk. P. C. bk. 2, c. 25, § 78; 1 Starkie, Cr. Pl. 51; 3 Bac. Abr. "Indictment," G, 4; Com. Dig. "Indictment," G, 2; 2 Hale, P. C. 177. As to the other objection, that the offence is stated to have been committed on divers days and times, it is sufficient to say, that as the offence is alleged to have been committed also on a day certain, if it be but a single offence, the words, "on divers days and times" may be rejected as insensible and surplusage. 1 Starkie, Cr. Pl. 235; Rex v. Redman, 2 Leach, 536; Rex v. Morris, 1 Leach, 109. If the offence might have been committed on divers days and times, the allegation in this respect is too uncertain to warrant a judgment for such times; but this does not prevent a judgment for one offence, which is stated to be committed on a day certain. Either way, then, the objection is not fatal. Hawkins puts an analogous case; if an indictment charge a man with having done a nuisance, such a day and year, &c. and on divers other days, it is void only as to the facts on those days, which are uncertainly alleged, and effectual for the nuisance on the day specified. 2 Hawk. P. C. bk. 2, c. 25, § 82. So in Rex v. Dixon, 10 Mod. 335, 1 Starkie, Cr. Pl. 52, the indictment charged, that they on such a day, and on divers other days and times, &c. as well before as after, &c. kept a common gaming table. On demurrer, the court held, that the time was uncertain as to all but one day, and that judgment could only be given for a single penalty. The rule is, that if an indictment be uncertain as to some particulars only, and certain as to the rest, it is void only as to those, which are uncertainly expressed, and good for the residue. 2 Hawk. P. C. bk. 2, c. 25, § 74. In the Case of Lord Wintown, too, it seemed admitted by the counsel on both sides, that even in an indictment for high treason, if a day certain were stated, as well as diversis diebus, it would be good.

Lord Wintown's Case, 6 St. Tr. 17, 53, 56, 57.

There are some other exceptions to the third count, which apply in common to the other counts; such as that the indictment does not charge, that the negroes and persons of colour were to be transported to the United States, or the territories thereof; or that they were free and not bound to service; or that the defendant was a citizen or resident within the United States; or that the offence was committed on board an American vessel. It is a sufficient answer to all these objections, that the indictment in these respects follows the language of the statute, and no more certainty is in general required in cases of this sort. Exceptions there may be; but this case falls not within them. Hawk. P. C. c. 25, § 3. The offence may be committed, although the negroes are not to be transported to the United States, or their territories; and the causing of any vessel to sail from any port within our jurisdiction, for the purpose of being engaged in the slave trade, may be an offence against the statute, although such vessel be a foreign vessel, and the defendant be not a citizen or resident. But if it be otherwise, this as well as the other points stated in the exception are matters of defence, and are not necessary to be averred or negatived in the indictment. Another exception is, that the phrase, "persons of colour," is too indefinite and is unintelligible. It has, however, acquired quite as definite a meaning as negro, mulatto, &c.; and at all events is the chosen phrase of the statute, which we cannot reject, and the indictment is not bound to avoid or to define it. Another exception is, that in the third count the name of the owner of the vessel is alleged to be unknown, when he was known, or might have been ascertained. The indictment charges, that the defendant did, "as master, for some other person, the name whereof being to the jurors yet unknown, cause a certain vessel, called the Science, to sail from a port within the jurisdiction of the United States, &c." Now there is no pretence to say, that if the averment were material, the indictment might not so allege it, if such were the fact. 2 East. P. C. 651, 781; 1 Starkie, Cr. Pl. 173. All the authorities show that it would be good under such circumstances. And if the case of Rex v. Walker cited from 3 Camp. 264, be supposed to assert, (what was certainly not the case before the court) that if the indictment conformed to the fact upon the evidence before the grand jury, and the certainty of ownership was made out only by the evidence subsequently given at the trial, it would be a fatal objection, we are not prepared to admit the doctrine to this extent: and we should choose to reserve our opinion until the case came in judgment before us. See 1 Starkie. Cr. Pl. 175, 176. But in no shape can this be a good objection in arrest of judgment, for the indictment is good, if the fact warrant it; and we may add, that there was no evidence at the trial, that the grand jury had not found the indictment according to the evidence before them. And it is at least questionable, whether the name of the person, known or unknown, for whom the act is done, is material to be stated in any indictment on the statute.

Allusion has been made to the subsequent averment in the third count, that the vessel had been previously fitted out, &c. by the owners for the slave trade. This whole averment may be, nay, must be rejected as surplusage, for it constitutes no part of the offence charged in the preceding part of the third count, which is complete without it.

Upon the whole, the motions for a new trial and in arrest of judgment are overruled, and judgment will be pronounced against the defendant, the third count being in substance, though not technically accurate.